UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY PERRY,

      Plaintiff,                                         Case No.

v.                                                    Hon.

ANN ARBOR PUBLIC SCHOOLS,

      Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
Noah@hurwitzlaw.com

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff Amy Perry (hereinafter "Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, and hereby states the following:

**INTRODUCTION**

1. Plaintiff Amy Perry was a dedicated high school English teacher for 25 years prior to her unlawful termination on June 4, 2024, which came only as a result of her exercising protected medical leave and seeking medical accommodation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA")

1

and the Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 *et seq.*

## JURISDICTION AND PARTIES

2. Plaintiff is an individual residing in Ann Arbor, Michigan.

3. Defendant is in Ann Arbor, Michigan.

4. The United States District Court for the Eastern District of Michigan has federal question jurisdiction over Plaintiff's claims under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* and supplemental jurisdiction of the claim under the PWDCRA, MCL 37.1101 *et seq.* pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as it is the district where Defendant resides.

## FACTUAL ALLEGATIONS

6. Plaintiff incorporates by reference the foregoing paragraphs.

7. Plaintiff was hired as an English teacher in August 1998.

8. Plaintiff was employed at Pioneer High School from 2003 to 2022 and Huron High School from 2022 until her termination.

9. During the second semester of the 2021-2022 school year, Plaintiff suffered from Meibomian Gland Dysfunction, a medical condition that affects the eye.

10. Plaintiff sought treatment for her medical condition, including inserting punctal plugs into her tear duct openings.

11. Plaintiff's vision continued to deteriorate, and she was forced to request FMLA leave. Plaintiff's request for FMLA leave was first supported by Dr. Thomas E. Kehn MD at Huron Ophthalmology and then extended by Dr. Nambi Nallasamy at the University of Michigan Health Ophthalmology Cornea and Refractive Surgery Clinic.

12. Plaintiff's FMLA leave started on or around March 1, 2022.

13. Plaintiff eventually found relief for her condition through serum tears and her FMLA ended on or around June 10, 2022.

14. Plaintiff was unable to return to work for the 2021-2022 school year as her FMLA leave ended on the last day of school.

15. Defendant uses a portal called Education Advanced-Evaluation to manage and organize evaluation materials which records data such as formal observations, teacher lesson plans, teacher reflections related to observations, student learning objectives, and student growth calculator results.

16. Upon information and belief, teachers were assessed with the following criteria: 60% teacher effectiveness rubric, 20% student learning objectives, 10% building score state assessment, and 10% district score state assessment. The teacher

effectiveness rubric consists largely of information gathered while performing formal classroom observations.

17. Plaintiff completed a self-evaluation for the 2021-2022 school year on January 6, 2022.

18. Due to her medical leave, Pioneer High School Principal Tracey Lowder was unable to complete any classroom observations.

19. Mr. Lowder additionally was unable to complete any observations following Plaintiff's FMLA leave as the school year had ended.

20. Mr. Lowder did not complete the summative evaluation of Plaintiff for the 2021-2022 school year due to the lack of classroom observations.

21. Additionally, no student learning objective data was inputted into the portal for Plaintiff's 2021-2022 school year.

22. In February 2023, Plaintiff fell and broke her femur and fractured a vertebrae. The following day, Plaintiff had surgery to re-attach her femoral neck to her bone using screws.

23. As a result of this surgery, Plaintiff suffers from pain at the surgery site, and a concomitant limp.

24. Plaintiff has been treated by orthopedic specialists and physical therapists, but still suffers from pain.

25. Plaintiff had a total hip replacement on June 24, 2024, in hopes to correct the original surgery.

26. In March 2023, Plaintiff requested protected medical leave under the FMLA to care for her medical condition that substantially limited her major life activities.

27. Defendant was aware of her medical condition because she submitted a Certification of Health Care Provider for Employee's Serious Health Condition and paperwork in support of her request for FMLA leave.

28. Defendant granted Plaintiff's request and her FMLA leave began on February 24, 2023, and lasted until March 24, 2023. Plaintiff's physician later requested an extension of her medical leave until May 24, 2023, which was approved by Defendant.

29. On March 13, 2023, Huron High School Principal Che Carter lectured Plaintiff about the detriment of her medical absences, stating that parent-teacher conferences were a contractual obligation, and that Plaintiff was required to inform the parents if she would be unavailable

30. Prior to her accident, Plaintiff completed a self-evaluation and had discussed the evaluation process with her evaluator, Tony Whiren.

31. At the time of Plaintiff's accident, there were no observations or observation feedback listed on the Education Advanced-Evaluation as Mr. Whiren had not observed Plaintiff or visited her classroom.

32. During Plaintiff's medical leave, Mr. Whiren discussed with Plaintiff his intention to formally observe her in April 2023. However, Plaintiff's medical leave was extended, and Mr. Whiren was unable to observe her in April.

33. Plaintiff's classes were again covered by a substitute during her medical leave.

34. Plaintiff returned to work on May 24, 2023, and a decision was made to allow the substitute to continue covering her classes until the end of the school year.

35. On May 23, 2023, Principal Che Carter sent Plaintiff an email outlining her job responsibilities following her return to work. This email stated in pertinent part:

> Daily you will be utilized to provide support for unfilled absences. Wednesday May 24th, and each day thereafter you will report to Mr. Edmondson's office. When you do not have an assignment you will have the opportunity to observe ELA classrooms and or connect with MYP IB coordinator, support the ELA department as determined by the ELA department chair.

36. As a result of Plaintiff not returning to her classroom, Mr. Whiren was unable to complete any classroom observations and did not complete the summative evaluation of Plaintiff's teaching for the 2022-2023 school year.

6

37. Again, no student learning objective data was inputted into the portal for Plaintiff's 2022-2023 school year.

38. In September 2023, Plaintiff was invited to a meeting with Principal Che Carter, Assistant Principal Karent Siegal, Assistant Superintendent – Human Resources and Employee Relations John Randle, and AAEA President Fred Klein.

39. During this meeting, Principal Che Carter reiterated that the school could not evaluate Plaintiff for the 2022-2023 school year.

40. This was presumably due to the lack of classroom observation and student growth data due to Plaintiff's medical leave.

41. Additionally, during this meeting, Principal Che Carter strongly encouraged Plaintiff to accept a non-teaching position for considerably lower compensation.

42. Plaintiff refused the demotion and reminded the group of her medical conditions and the struggles she had been facing as a result.

43. On June 4, 2024, Plaintiff met with Che Carter who informed her that she was being laid-off at the end of the contract year.

44. On June 5, 2024, Plaintiff received an email from Holly Scherer containing the terms of Plaintiff's lay-off.

45. Plaintiff discussed the lay-off with Fred Klein who informed her that lay-off decisions were made based on previous school year evaluations.

46. Plaintiff reminded Mr. Klein that she was not evaluated for the 2022-2023 school year and Mr. Klein suggested she check the Michigan Department of Education website.

47. Despite Principal Che Carter stating that Plaintiff was not evaluated, Plaintiff learned that an evaluation was submitted for the 2022-2023 school year and was categorized as "minimally effective," despite no formal classroom observations being conducted due to Plaintiff's protected medical leave.

48. Plaintiff additionally learned that an evaluation was submitted for the 2021-2022 school year and was also categorized as "minimally effective," despite similarly having no formal classroom observations due to Plaintiff's protected medical leave

49. Plaintiff was not aware she was being evaluated and was not teaching at the time of both evaluations.

50. Prior to this, Plaintiff had always known she was being evaluated, including who was evaluating her and the result of the evaluation.

51. Since being hired by Defendant in 1998, Plaintiff has never received any negative performance evaluations, with the only exception being the two years that Plaintiff was penalized by Defendant for exercising protected medical leave under the FMLA.

52. Plaintiff was recently evaluated at "Effective" for the 2023-2024 school year, a year she did not take protected medical leave.

53. As of July 5, 2024, the Education Advanced-Evaluation portal continues to show that no observations or summative evaluations were completed for the 2021-2022 and the 2022-2023 school year, aside from the self-assessments completed by Plaintiff.

54. Plaintiff attempted to exhaust all union administrative remedies, but her union denied her an opportunity to file a grievance, stating "I think it might be a good idea for you to see if there are any legal options available to you.  MEA only provides legal assistance in tenure cases or if criminal charges are brought against a Member, and this is neither of those cases. so you would have to do that on your own."

55. On June 4, 2024, Defendant terminated Plaintiff's employment.

56. But for Plaintiff taking protected medical leave, Plaintiff would not have been terminated.

57. Despite Defendant recalling 48 of the 55 teachers who were laid off and having 21 open teacher positions heading into the 2024-25 school year, Plaintiff has not been recalled to work, which constitutes an additional act of discrimination and retaliation against Plaintiff.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT OF 1993 ("FMLA") INTERFERENCE AND RETALIATION

58. Plaintiff incorporates by reference herein the foregoing paragraphs.

59. Plaintiff's condition qualifies as a "serious health condition" under the Family and Medical Leave Act of 1993 ("FMLA") because it has involved "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

60. The U.S. Department of Labor ("DOL") regulations specifically prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempting to exercise" his or her rights under the Family and Medical Leave Act ("FMLA"). 29 C.F.R. § 825.220(c).

61. Plaintiff engaged in protected activity when she took protected leave beginning around March 1, 2022, and lasted until around June 10, 2022, and suffered an adverse employment action when she was evaluated as "minimally effective" during her time on protected medical leave.

62. Plaintiff additionally engaged in protected activity when she took protected leave beginning on February 24, 2023, and lasted until May 24, 2023, and suffered an adverse employment action when she was evaluated as "minimally effective" during her time on protected medical leave.

63. Plaintiff was unlawfully terminated on June 4, 2024.

64. The proffered reason for her termination is pretextual. Plaintiff was retaliated against for taking protected leave for her serious health conditions.

65. Defendant's actions were knowing and willful.

66. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of the violation.

67. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## COUNT II
## DISABILITY DISCRIMINATION
## PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")

31. Plaintiff incorporates by reference the foregoing paragraphs.

32. Plaintiff has a "disability" within the meaning of MCL § 37.1103(d).

33. Plaintiff was regarded as having a disability under MCL § 37.1103(d)(iii).

34. Plaintiff requested medical leave for her medical conditions.

37. Defendant retaliated against her for her medical conditions when she was terminated on June 4, 2024.

38. Defendant discriminated against her on account of her "actual or perceived" disability when she was terminated on June 4, 2024.

39. Defendant's actions were knowing and willful.

40. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

41. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## COUNT III
## RETALIATION
## PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("PWDCRA")

32. Plaintiff incorporates by reference the foregoing paragraphs.

33. Plaintiff has a "disability" within the meaning of MCL § 37.1103(d).

34. Plaintiff was regarded as having a disability under MCL § 37.1103(d)(iii).

12

68. Plaintiff engaged in protected activity when she took protected medical leave.

69. Defendant retaliated against her for having a medical condition by rating her as minimally effective on two occasions, despite not being observed, and then terminating her based on the evaluations.

70. Defendant's actions were knowing and willful.

71. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result of the violation.

72. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

A. Compensatory damages for monetary and non-monetary loss,

B. Exemplary and punitive damages;

C. Prejudgment interest;

    D.    Attorneys' fees and costs; and

    E.    Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

   */s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St. Ste. 125
Ann Arbor, MI 48104

Dated: September 4, 2024

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMY PERRY,

      Plaintiff,                       Case No.

v.                                     Hon.

ANN ARBOR PUBLIC SCHOOLS,

      Defendant.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
Noah@hurwitzlaw.com

---

## JURY DEMAND

Plaintiff Amy Perry, by and through her attorneys, HURWITZ LAW PLLC, and hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                            Respectfully Submitted,

                                            HURWITZ LAW PLLC

                                            */s/ Noah S. Hurwitz*
                                            Noah S. Hurwitz (P74063)
                                            Attorneys for Plaintiff
                                            340 Beakes St. Ste. 125
Dated: September 4, 2024                Ann Arbor, MI 48104